Chaplin
*v.*
Hartshorne.

—◦◦◦—

The inhabitants of the town of LEBANON *against* The inhabitants of the town of HEBRON.

Where a pauper having a settlement with her father in *H.,* removed, while a mi-nor, with him to *C.,* where she resided in his family, more than six years after she became of full age, and, during that period, supported herself; it was held, that she thereby acquired a settlement, in her own right, in *C.*

Where certain advancements were made, by the select-men of a town, to a fe-male pauper, to aid her in a prosecution for the maintenance of a bastard child, and for her personal relief, which were afterwards reimbursed to the town from money paid by the putative father of the child, on a settlement; it was held, that such advancements had no effect to prevent her gaining a settlement in another town, by residence.

The settlement of a female inhabitant of this state, married to a foreigner hav-ing no settlement here, is not affected, by such marriage.

Where the father has no settlement in this state, the settlement of the child follows that of the mother.

Lebanon
*v.*
Hebron.

This was an action of *assumpsit,* for money expended by the plaintiffs, from the 21st of *February,* 1818, to the 1st of *April,* 1820, for the support of *Elizabeth Underwood* and *Mary-Ann* and *Thomas,* her minor children, alleged to have been, at the time of furnishing such support, paupers, legally settled in the town of *Hebron.* A case, stated and agreed to, by the parties, was reserved for the advice of this Court.

*Elizabeth Archer* was born in *Hebron,* where her father had a settlement, in 1775, and removed, with her father, to *Colchester,* in 1795. She resided in *Colchester,* in the family of her father, being occasionally assisted by the town, until the 1st of *December,* 1806. From this time she continued to reside in her father's family in *Colchester,* until the 24th of *November,* 1813, when she was married to *Thomas Underwood,* a foreigner, born in *London,* who never gained a settlement in this state. During the latter period, *viz.* from the 1st of *December,* 1806, to the 24th of *November,* 1813, she supported herself, unless the following facts constitute an exception to this statement. On the 26th of *February,* 1808, being pregnant with a bastard child, she applied to the select-men of *Hebron* to assist her to prosecute one *Jonah Thomas,* by whom she claimed the child was begotten. They did assist her, so far as to pay the duty on her complaint, and give bond for prosecution. Before the suit came to trial, *Thomas* settled it with the select-men, by giving his notes, payable to the treasurer of the town of *Hebron,* in one, two, three and four years. He also gave a bond and mortgage to secure the town from expense, on account of the child. The physician, who attended her, at the birth of the child, presented his bill to the agent of the town of *Hebron,* and was paid by a town order. An individual furnished her with sundry articles, to the amount of 1 dollar, 41 cents; and his bill also was paid by a town order. *Thomas's* notes were all paid, as they became due, to the select-men of *Hebron,* who paid over the money to *Elizabeth Archer,* retaining about 40 dollars for charges on the prosecution against *Thomas* and the bills paid on her account.

*Mary-Ann* and *Thomas Underwood,* the legitimate children of *Elizabeth,* were born in *Colchester,* and have never gained any settlement for themselves, by residence. They, with their mother, needed relief, and were supplied by the plaintiffs.

*Goddard* and *W. T. Williams,* for the plaintiffs.

*Cleaveland*, for the defendants.

BRAINARD, J. It appears from the case, as stated, that *Elizabeth Archer* was born in *Hebron*, where her father had a settlement, and where her own settlement must remain, until she acquired another, either in right of her father, in her own right, or by marriage. It further appears, that at the age of about twenty, she removed, with her father as part of his family, to the town of *Colchester*, where from the year 1795, she continued to reside with her father, as part of his family, until the 1st day of *Decemcer*, 1806 ; and that she still continued to reside in *Colchester*, in her own right, from that time until the 13th day of *November*, 1813, during which time she supported herself, except what supplies she received from the town of *Hebron*. Upon these facts I am of opinion, that she acquired a settlement, in her own right, in the town of *Colchester*.

The case further states, that on the 13th day of *November*, 1813, she married *Thomas Underwood*, a foreigner, who neither then had, nor has ever since gained, a settlement in this state. By this marriage her settlement was not changed. It remained as it was.

The case further states, that the children, the paupers, were born in *Colchester*. Where the father has no settlement, the settlement of the children follows that of the mother.

The advancements made by the town of *Hebron*, to *Elizabeth*, the mother, can have no effect. They were made either on her individual credit, or on the funds in the hands of the select-men, or were gratuitously advanced.

I would, therefore, advise, that judgment be rendered for the defendants.

The other Judges were of the same opinion.

Judgment for defendants.